```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

ALLSTATE INSURANCE COMPANY,   )
                              )
            Plaintiff         )
                              )
        v.                    )   Case No. 2:09 cv 176
                              )
HIRAM ALAMO, RZ nf Michael    )
Zellers nf Rhonda Somers, CM, )
Jr. nf Lisa Moreno nf         )
Christopher Moreno, Sr.,      )
                              )
            Defendants        )
******************************)
HIRAM ALAMO,                  )
                              )
        Counter Claimant      )
                              )
        v.                    )
                              )
ALLSTATE INSURANCE COMPANY,   )
                              )
        Counter Defendant     )

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 46] filed by the plaintiff, Allstate Insurance Company, on April 26, 2010. For the following reasons, the motion is GRANTED.

## Background

The defendant, Hiram Alamo, was a substitute teacher at Edison Junior/Senior High School in Lake Station, Indiana. On October 15, 2008, Alamo interacted with a student, Ronald Zellers, whom Alamo believed was being disrespectful and ignoring

his authority. Alamo testified at his deposition that Zellers approached him in a threatening manner, and Alamo asked Zellers if he wanted to hit him. Zellers alleges that Alamo asked, "Are you challenging me?", and told Zellers to hit him. No physical altercation occurred at this time. Alamo responded by escorting Zellers to the principal's office.

When Alamo was leaving school, he noticed a white van following him. Alamo assumed he was being followed by students and pulled into a park. Zellers and Christopher Moreno, Jr., who also was a student at Edison Junior/Senior High School, were inside the van. The van followed Alamo into the park and quickly left. Alamo proceeded to follow the van to Moreno's home. Alamo, Zellers, and Moreno's testimonies differ at this point.

The facts most favorable to Alamo show that when Alamo arrived at Moreno's house, Moreno appeared angry and was waving his arms. Alamo lowered his window and asked Moreno what he was doing. Moreno replied by asking if Alamo wanted to fight Zellers, and Moreno told Alamo that Alamo should fight him instead because he was 18. Alamo stepped out, although he did not intend to fight anyone. Alamo walked around behind his vehicle and stood directly behind the driver's side rear wheel, approximately two feet from the vehicle. Moreno approached Alamo and threw a

2

punch, which Alamo intercepted. Alamo does not remember anything else about the incident until he woke up in an ambulance.

Zellers and Moreno provided a different account of the events, both stating that Alamo initiated the altercation. According to Zellers, Alamo exited his car and motioned for Zellers and Moreno to come towards him. When Alamo approached, he threw a punch at Moreno. Moreno blocked the punch, and Alamo fell as a result. Alamo tried to get up by grabbing Zellers' pants with his right hand and making a fist with his left. Zellers hit Alamo, and he fell back down. Zellers and Moreno then left.

Moreno claims that when Alamo exited his vehicle, he began yelling at the students. Alamo clenched his fists as though he was going to punch them, causing Moreno to put his hands up in reaction. Alamo then bumped into Moreno's chest and that caused Alamo to step back over the curb, fall, and hit his head.

Moreno and Zellers filed a complaint against Alamo in the Lake Superior Court alleging civil assault, battery, intentional infliction of emotional distress, negligent/wrongful infliction of emotional distress, and negligence. Alamo requested that Allstate provide him with a defense and indemnification in regard to these claims under the Homeowner's and Automobile policies that he holds with Allstate. Allstate brought this claim, seeking declaratory judgment that it does not have to provide

3

Alamo's defense or indemnification, and now moves for summary judgment.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. Ashman v. Barrows, 438 F.3d

781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact.  Wheeler, 539 F.3d at 634 (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786; Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008)

(stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Alamo and Allstate dispute whether the homeowner and automobile policies that Allstate issued to Alamo require Allstate to provide Alamo's defense to the claims pending against him in state court. The parties agree that Indiana law governs the interpretation of the terms of the policies because the contract was formed to insure a home and vehicle registered in Indiana. See Nautilus Ins. Co. v. Reuter, 537 F.3d 733, 737 (7th Cir. 2008) (discussing that the law of the state with the most intimate contacts, which is assessed by considering the place of contracting, place of contract negotiation, place of performance, location of subject matter, and domicile or place of business of the parties, governs interpretation of the contract). Interpretation of an insurance policy is a question of law to be decided by the court. National Fire and Casualty Company v. West, 107 F.3d 531, 534 (7th Cir. 1997). Insurance policies are interpreted according to the same rules of construction as other contracts. Barga v. Indiana Farmers Mut. Ins. Group, Inc., 687

N.E.2d 575, 578 (Ind. App. 1997); Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). Words are given their plain and ordinary meanings, and ambiguities are to be resolved in favor of the insured. Anderson v. State Farm Mut. Auto Ins. Co., 471 N.E.2d 1170, 1172 (Ind. App. 1984). When interpreting the contract, the court favors a meaning that provides coverage to the insured. West, 107 F.3d at 535; Barga, 687 N.E.2d at 578.

The Homeowner's Insurance Policy provides coverage for "occurrences" and specifically excludes coverage for bodily injury or property damage caused by the intentional or criminal acts of the insured. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." The policy term "accident" has been defined to mean an "unexpected happening without an intention or design." Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co., 634 N.E.2d 1336, 1338 (Ind. App. 1993). There is a distinction between an event that is unexpected or unintended and an act that is intended, but causes unexpected results. Allstate Ins. Co. v. Norris, 795 F.Supp. 272, 275 (S.D. Ind. 1992).

Similarly, the policy excludes coverage for "bodily injury or property damage intended by, or which may reasonably be

expected to result from the intentional or criminal acts or omissions of, any insured person."  Indiana law explains the intentional conduct exclusion as follows:

> 1.  The intent aspect means the "volitional performance of an act with an intent to cause injury . . ." Sans v. Monticello Ins. Co., 676 N.E.2d 1099, 1102 (Ind. App. 1997); Stevenson v. Hamilton Mut. Ins. Co., 672 N.E.2d 467, 470-472 (Ind. App. 1996).
>
> 2.  "'Expected' injury means injury that occurred when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions."  PSI Energy, Inc. v. Homes Ins. Co., 801 N.E.2d 705, 728 (Ind. App. 2004).

Alamo first argues that the term "occurrence" as defined in the homeowner's insurance policy is ambiguous and because of this there remains a question of fact concerning whether his actions fall outside the scope of the policy.  An insurance contract will be deemed ambiguous only if reasonable people upon reading the contract would differ as to the meaning of its terms.  Meridian Mut. Ins. Co. v. Cox, 541 N.E.2d 959, 961 (Ind. App. 1989).  The challenging party must show more than the mere existence of a controversy over the terms.  Barga, 687 N.E.2d at 578.  In Auto-Owners Ins. Co. v. Harvey, 842 N.E.2d 1279, 1284 (Ind. 2006), the insured pushed the victim, who subsequently slipped and fell to her death.  The court discussed that the "occurrence" could have

been the defendant's push or the subsequent slip and fall of the victim. For this reason, the court found that the contract was ambiguous as applied to the situation. Harvey, 842 N.E.2d at 1284. ("Under the facts of this case, however, the meaning and application of this provision is unclear.").

However, there is no dichotomy here between Alamo's actions and the resulting injury. The facts clearly establish that the only "occurrence" that may have led to the pending suit in state court was Alamo striking or creating a reasonable apprehension that he was going to strike Zellers and Moreno. When there is only one act or a series of acts that could constitute the occurrence, the policy is not ambiguous as applied to the situation. See PSI Energy, 801 N.E.2d at 735-36 (finding that "occurrence" is not ambiguous when applied to an act or series of acts). Therefore, the definition of "occurrence" as applied to the present situation is not ambiguous.

When determining whether the allegations fall within the definition of "occurrence" or whether the intentional acts exclusion precludes coverage, "[i]t is the nature of the claim, not its merits, that establishes the insurer's duty to defend." Terre Haute First Nat'l Bank, 634 N.E.2d at 1339 (quoting Trisler v. Indiana Ins. Co., 575 N.E.2d 1021, 1023 (Ind. App. 1991)). The insurer may look beyond the claims of the complaint to the

facts underlying those claims when determining whether to provide coverage. Wayne Twp. Bd. Of Sch. Comm'rs v. Indiana Ins. Co., 650 N.E.2d 1205, 1208 (Ind. App. 1995). "When the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." Wayne Twp. Bd., 650 N.E.2d at 1208.

The insurer's duty to defend is premised upon the underlying nature of the claim, not its merits, and the facts ascertained by the insurer after a reasonable investigation. Terre Haute First Nat'l Bank, 634 N.E.2d at 1339. Although Alamo argues that he did not commit a battery or act intentionally, the insured's proffer of innocence is not the determining factor in deciding whether the insurer must provide coverage. If the factual basis of the claims rests entirely upon proof of intentional conduct, and a reasonable investigation does not produce evidence that the insured acted in any other manner, the insured's actions fall outside the definition of occurrence and are specifically excluded by the intentional and criminal act provision. Terre Haute First Nat'l Bank, 634 N.E.2d at 1339.

Moreno and Zeller's claims for assault, battery, and intentional infliction of emotional distress are intentional torts that, by their nature, require proof of intentional conduct.

See, Kamaki Skiathos, Inc. v. Essex Ins. Co., 396 F.Supp.2d 624, 628 (D. Md. 2005)(finding that insurance policy did not cover claims for battery because they were precluded by the intentional act exception under the policy). Of greater concern are Moreno and Zeller's allegations of negligent/wrongful infliction of emotional distress and negligence against Alamo. In support of their negligence claims, Moreno and Zellers allege that Alamo breached his duty by placing them in fear of an immediate battery and physically touching them. These allegations are consistent with what they allege in their assault and battery claims. In addition, Moreno and Zellers claim that Alamo followed them, an intentional act, and blocked egress from Moreno's residence, which is premised upon the intentional tort of false imprisonment. Therefore, the underlying allegations are based upon the intentional acts of Alamo rather than negligent conduct. When the facts underlying a claim for negligence are based on intentional conduct, the insured's actions fall outside the scope of the definition of "occurrence" as defined by the policy and are specifically excluded by the intentional act provision unless the insurer's reasonable investigation reveals that the insured could have acted in a manner covered by the terms of the policy. Terre Haute First Nat'l Bank, 634 N.E.2d at 1339.

Alamo claims that after he exited his vehicle, he intercepted a punch from Moreno and does not recall what occurred after that until he was in the ambulance. Because Alamo cannot account for the time between these events, there is insufficient evidence to rebut Zellers' and Moreno's allegations that Alamo acted intentionally by hitting or trying to hit them within this time frame. A reasonable investigation would have revealed that if Alamo acted, he acted intentionally and outside the scope of the insurance policy. None of the facts suggest that Alamo acted negligently and is entitled to coverage under the policy. Therefore, summary judgment is GRANTED in favor of Allstate under the terms of the homeowners policy.

With regards to the automobile coverage, the "policy protects an insured person from liability for damages arising out of the ownership, maintenance or use, loading or unloading of an insured auto." Alamo argues that the "arising out of" language is ambiguous, and because of this there remains a question of fact that cannot be determined on summary judgment. In support of his argument, Alamo points to Barga, 687 N.E.2d 575, asserting that this case stands for the proposition that the phrase "arising out of" is susceptible to more then one interpretation. However, Barga defines "arising out of" as the "efficient and predominating cause" of the accident. In that case, it was not

clear whether the insured's actions arose out of his business so that the business exclusion in the policy applied. Barga, 687 N.E.2d at 578. See also Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 291 N.E.2d 897, 899 (Ind. 1973)("[T]he 'efficient and predominating cause' of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered."). Barga distinguished the business exclusion it was interpreting from the "arising out of" language in the context of the use and maintenance of the vehicle. Barga, 687 N.E.2d at 578. When considering whether the accident arose out of the use, maintenance, or loading and unloading of the vehicle, the prevailing question is whether the accident was predominantly caused by such use. Lumbermens, 291 N.E.2d at 899. Accidents that occur outside and independent of the vehicle are too attenuated to constitute use of the vehicle within the terms of the contract. Lumbermens, 291 N.E.2d at 899.

The events that gave rise to Zellers' and Moreno's claims occurred outside of and independent of Alamo's vehicle. Alamo used the vehicle to drive to Moreno's residence and parked it in such a manner that it may have prevented egress from Moreno's driveway. Driving the vehicle to the location where the injury occurred is insufficient to support a finding that the vehicle was a cause of the accident. See Lumbermens, 291 N.E.2d at 899

13

(finding that the automobile was not the predominate cause of the injury where the insured drove to the location where he was injured by falling through the stairs when unloading items from the truck). And although the vehicle may have been parked in such a manner as to prevent egress, this was not the predominate source of the injuries Moreno and Zellers allege. Rather, the proximate cause of the alleged injuries was Alamo striking or creating apprehension that he was going to strike Zellers and Moreno immediately. This is evidenced by the fact that Zellers and Moreno did not file a separate claim for false imprisonment and that their complaint primarily concerns the alleged assault and battery. Even assuming arguendo that the manner in which the vehicle was parked was the predominate cause of Zellers' and Moreno's injuries, the exclusion for intentional and criminal actions would preclude coverage because this claim is premised on false imprisonment, an intentional tort. Therefore, the automobile policy does not provide coverage to Alamo for the claims pending in state court.

Alamo also asserted counterclaims against Allstate for coverage under the homeowners and automobile policies and for meritless pleadings, bad faith, intentional breach of contract, malicious prosecution, and abuse of process. Because the court finds that Alamo is not entitled to coverage under the home-

owner's or automobile policies, summary judgment must be granted in favor of Allstate on all of Alamo's counterclaims.

To begin, the court already has determined that Alamo is not entitled to coverage under the insurance policies, so Alamo's counterclaims for coverage under the policies must fail.  Next, Indiana does not recognize a cause of action for meritless pleadings.  Mirka v. Fairfield of Am., 627 N.E.2d 449, 452 (Ind. App. 1994).  Allstate's claim was a good faith dispute concerning coverage because the parties disputed whether a valid claim existed.  See Hoosier Ins. Co. v. Audiology Found. Of Am., 745 N.E.2d 300, 310 (Ind. App. 2001)(holding that a good faith dispute over whether a valid claim exists will not supply grounds for a bad faith claim).  Allstate did not maliciously bring a meritless claim, as is evidenced by its success.  Because Allstate brought its claim in good faith, Alamo's counterclaims for bad faith, malicious prosecution, and abuse of process are meritless.  See Allstate Ins. Co. v. Fields, 885 N.E.2d 728, 732 (Ind. App. 2008).  Finally, Allstate did not breach the contract because it is not required to provide coverage to Alamo under the terms of the contract.  Therefore, Alamo cannot succeed on any of his counterclaims.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 46] filed by the plaintiff, Allstate Insurance Company, on April 26, 2010, is GRANTED.

ENTERED this 16th day of November, 2010

                                            s/ ANDREW P. RODOVICH
                                                United States Magistrate Judge